ORDERED PUBLISHED

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: <br> JOHN JEAN BRAL, <br>          Debtor. | BAP No. CC- 20-1039-STL <br><br> Bk. No. 8:17-bk-10706-ES |
| STEWARD FINANCIAL, LLC, <br>          Appellant, <br> v. <br> JOHN JEAN BRAL, <br>          Appellee. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Erithe A. Smith, Bankruptcy Judge, Presiding

APPEARANCES:

Tom Lallas of Levy, Small & Lallas argued for appellant; Sean A. O'Keefe of O'Keefe & Associates Law Corporation, P.C. argued for appellee

Before: SPRAKER, TAYLOR, and LAFFERTY, Bankruptcy Judges.

SPRAKER, Bankruptcy Judge:

## INTRODUCTION

Steward Financial, LLC ("Steward Financial") filed a proof of claim seeking to hold chapter 11[1] debtor John Jean Bral liable for his role in the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

separate bankruptcy filing of Ocean View Medical Investors, LLC ("Ocean View"). It alleged that Bral committed abuse of process and tortiously interfered with its contractual relations by improperly placing Ocean View into bankruptcy to stop Steward Financial's foreclosure of Ocean View's real property. Bral objected to the claim. The bankruptcy court disallowed Steward Financial's claim, holding that the Bankruptcy Code preempted the state law causes of action because they arose from Bral's filing of Ocean View's voluntary bankruptcy petition. Alternatively, the bankruptcy court ruled that Steward Financial had failed to demonstrate that Bral's conduct caused any injury for which Steward Financial was legally entitled to recover damages.

On appeal from the bankruptcy court's order disallowing the claim, we agree with both grounds for disallowance. Accordingly, we AFFIRM.

**FACTS**

Bral and Steward Financial's principal Barry Beitler formed Ocean View in 2005. Ocean View's operating agreement identified Bral and Beitler as co-managers. Its sole asset was an office building located in Newport Beach, California. In October 2005, First Regional Bank loaned $4,725,000 to Ocean View, secured by the office building. Bral and Beitler later guaranteed the loan, in exchange for an extension of the loan's maturity date.

In 2012, the loan matured and Ocean View defaulted. In June 2014,

2

Beitler – through his wholly-owned entity Steward Financial – acquired the note, the deed of trust, and the guaranties. Steward Financial thereafter scheduled a nonjudicial foreclosure sale against the office building for November 21, 2014.

On the morning of the scheduled foreclosure sale, Bral filed a voluntary chapter 11 bankruptcy petition on behalf of Ocean View. Unaware of Ocean View's bankruptcy filing, the foreclosure trustee went forward with the sale and accepted Steward Financial's $3,000,000 credit bid (the "First Sale"). After learning of the Ocean View bankruptcy filing, the foreclosure trustee vacated the First Sale.[2]

Beitler, as a managing member of Ocean View, moved to dismiss the bankruptcy. According to Beitler, he never signed or consented to the resolution authorizing Ocean View to commence a bankruptcy case. He argued that Bral was not authorized to file bankruptcy on behalf of Ocean View without Beitler's authorization as co-managing member. Ocean View responded that the members of Ocean View had removed Beitler as a co-manager prior to the bankruptcy filing. The bankruptcy court found that Beitler remained a co-manager of the debtor and failed to authorize the

---

[2] There is no indication that a trustee's deed ever was executed or recorded in favor of Steward Financial in furtherance of the First Sale.

3

bankruptcy filing. As a result, the court granted the dismissal motion.[3]

A second foreclosure sale (the "Second Sale") was held on March 20, 2015. Steward Financial again purchased the property, but this time it credit bid $4,100,000, after competing bidders raised the sales price to $4,000,000.

After Steward Financial completed the Second Sale, it filed a complaint in the Orange County Superior Court against Bral and others for the difference between its cost of acquisition at the two sales. It asserted that it was harmed by the $1,100,000 differential, which it alleged resulted from Bral's abuse of process and tortious interference with Steward Financial's contractual relations.

Bral commenced his voluntary chapter 11 case in February 2017. Steward Financial filed two proofs of claim in Bral's case. Claim number 19 was based on the same allegations and alleged damages as set forth in Steward Financial's state court complaint against Bral. Claim number 20 was based on Bral's remaining liability under the guaranty as of his chapter

---

[3] A second bankruptcy case – an involuntary case – was commenced against Ocean View in February 2015, less than two weeks after the dismissal of Ocean View's voluntary case. Shortly thereafter, the bankruptcy court found that the involuntary case had been filed in bad faith and dismissed it with a 180-day bar to refiling. The court further found that Bral had instigated the involuntary filing. Steward Financial's claim number 19, however, focuses on the higher purchase price it had to pay to acquire the property as a result of the invalidation of the First Sale caused by Ocean View's voluntary bankruptcy filing. The bankruptcy court did not make any finding of bad faith when it dismissed Ocean View's voluntary bankruptcy case.

11 filling.

Bral objected to Steward Financial's claim number 19. He argued that Steward Financial could not maintain a claim against him based on state law for alleged misconduct in filing Ocean View's voluntary bankruptcy petition. As Bral put it, any such claim was barred by federal preemption.

In the alternative, Bral argued that Steward Financial's claim was barred by the "economic loss rule," which generally bars any recovery of damages based on tort when the duty breached arose solely from contractual obligations. Bral additionally maintained that the increase in the successful bid price between the two foreclosure sales did not cause Steward Financial to suffer any legally cognizable harm or damages.

Steward Financial opposed the claim objection. It argued that the Ninth Circuit's decision in *Davis v. Yageo Corp.*, 481 F.3d 661 (9th Cir. 2007), limited the scope of preemption to misconduct that occurred during the course of the subject bankruptcy case. Steward Financial reasoned that the relevant bankruptcy case in this instance was Bral's case and not Ocean View's case, because it was seeking relief from Bral's misconduct, which occurred before he filed bankruptcy. As for the harm caused by Bral's actions, it insisted that Bral's filing of Ocean View's voluntary case directly resulted in "the $1,100,000 reduction in [Bral's] Remaining Guaranty Liability."

After holding a hearing, the bankruptcy court sustained Bral's claim

objection. The court agreed with Bral that Steward Financial's state law causes of action were preempted by the Bankruptcy Code. The court also adopted Bral's analysis of causation and damages and concluded that Steward Financial had not established that it incurred any legally cognizable damages.[4]

The bankruptcy court entered its order sustaining the claim objection on February 3, 2020. Steward Financial timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.     Did the bankruptcy court correctly disallow Steward Financial's proof of claim based on federal preemption?

2.     Did the bankruptcy court err when it alternately held that Steward Financial had failed to establish any legally cognizable harm arising from Bral's filing of a voluntary petition on behalf of Ocean View?

## STANDARDS OF REVIEW

Whether state law is preempted by the Bankruptcy Code is a question of law we review de novo. *MSR Expl., Ltd. v. Meridian Oil, Inc.*, 74

---

[4] The bankruptcy court also expressed agreement with Bral's argument based on the "economic loss rule." Because we conclude below that the bankruptcy court's ruling can be upheld on the alternate grounds of federal preemption and the absence of damages, we decline to address the economic loss rule.

6

F.3d 910, 912 (9th Cir. 1996). When we review a matter de novo, we consider it as if the bankruptcy court did not previously decide it. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

Whether a party to a claim objection proceeding has produced sufficient evidence to carry their evidentiary burden is a question of fact reviewed under the clearly erroneous standard. *Garner v. Shier (In re Garner)*, 246 B.R. 617, 619 (9th Cir. BAP 2000). A bankruptcy court's factual findings are not clearly erroneous unless they are illogical, implausible, or not supported by the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010)). On the other hand, whether a claimant has a right under state law to recover for alleged damages is a matter of interpreting state law, which we review de novo. *See Hardin v. Gianni (In re King St. Invs., Inc.)*, 219 B.R. 848, 853 (9th Cir. BAP 1998).

## DISCUSSION

## A.    The bankruptcy court correctly applied federal preemption.

Steward Financial contends that the Bankruptcy Code does not preempt its claims against Bral for abuse of process and tortious interference arising from Ocean View's bankruptcy filing. Because Steward Financial asserts state law claims arising from the filing of the Ocean View bankruptcy, we disagree.

### 1.    Preemptive effect of the Bankruptcy Code and Rules.

Federal preemption arises from the Constitution's Supremacy Clause.

*Miles v. Okun (In re Miles)*, 294 B.R. 756, 759 (9th Cir. BAP 2003), *aff'd* 430 F.3d 1083 (9th Cir. 2005) ("*Miles I*"). It applies when state laws interfere with or are contrary to federal law. *B–Real, LLC v. Chaussee (In re Chaussee)*, 399 B.R. 225, 230 (9th Cir. BAP 2008) (citing *Perez v. Campbell*, 402 U.S. 637, 652 (1971)).

Deciding whether federal preemption applies is largely a question of interpreting congressional intent. *Miles I*, 294 B.R. at 759 (citing *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). As we explained in *Miles I*:

> Congressional intent to preempt may be inferred from a scheme of federal regulation that is so comprehensive, or where the federal interest so dominates, that the federal system may be assumed to preclude enforcement of state laws on the same subject. When a federal scheme is sufficiently comprehensive to warrant an inference that Congress "left no room" for state regulation, the "field" has been preempted.

*Id.* (citing *Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)).

On a number of occasions, the Ninth Circuit has held that the Bankruptcy Code and Rules completely preempt state law causes of action and remedies arising from the act of filing a bankruptcy (and from the act of filing other papers in the bankruptcy case.) *See, e.g.*, *Miles v. Okun (In re Miles)*, 430 F.3d 1083, 1089-90 (9th Cir. 2005) ("*Miles II*") (holding that § 303(i) completely preempts state law tort causes of action for damages based on the filing of an involuntary bankruptcy petition); *MSR Expl., Ltd.*,

8

74 F.3d at 912-13 (holding that the Bankruptcy Code completely preempts state law malicious prosecution causes of action for conduct in bankruptcy court proceedings – including the allegedly wrongful filing of proofs of claim); *Gonzales v. Parks*, 830 F.2d 1033, 1035-37 & n.4 (9th Cir. 1987) (holding that the Bankruptcy Code preempts state law abuse of process causes of action based on the debtor's filing of an allegedly frivolous bankruptcy petition). This Panel similarly has held that such state law causes of action are preempted. *See, e.g.*, *In re Chaussee*, 399 B.R. at 234 (holding that federal preemption barred a cause of action under the Washington State Consumer Protection Act when the cause of action was based solely on the creditor's filing of proofs of claim in the bankruptcy court); *Miles I*, 294 B.R. at 758.

The above-referenced decisions have identified five considerations driving the application of federal preemption in this area: (1) the provision for uniform federal bankruptcy laws under Art. I, § 8, cl. 4 of the United States Constitution, *Miles II*, 430 F.3d at 1090; *MSR Expl., Ltd.*, 74 F.3d at 913–15; (2) the congressional grant of exclusive bankruptcy jurisdiction to the federal courts, *Miles II*, 430 F.3d at 1090; *MSR Expl., Ltd.*, 74 F.3d at 913; (3) Congress' enactment of a "complex, detailed, and comprehensive" scheme of bankruptcy laws, *Miles II*, 430 F.3d at 1089 (quoting *MSR Expl., Ltd.*, 74 F.3d at 914); (4) the federal remedies Congress provided for improper conduct in bankruptcy proceedings, thereby indicating "that

9

Congress has considered the need to deter misuse of the process and has not merely overlooked the creation of additional deterrents." *Miles II*, 430 F.3d at 1089 (quoting *MSR Expl., Ltd.*, 74 F.3d at 915); and (5) the policy concern that Congress and the federal courts – rather than state courts – should decide what incentives and penalties should apply in connection with the use (and misuse) of the bankruptcy process. *Miles II*, 430 F.3d at 1090; *Gonzales*, 830 F.2d at 1036.

These five considerations are equally persuasive here and mandate a similar result. There is nothing about Bral's conduct or the availability of remedies for Steward Financial that justifies a different result. Furthermore, applying preemption here also will help ensure that bankruptcy courts are permitted to manage the bankruptcy cases over which they preside. In the parlance of *MSR Exploration*, "the highly complex laws needed to constitute the bankruptcy courts and regulate the rights of debtors and creditors . . . underscore the need to jealously guard the bankruptcy process from even slight incursions and disruptions" associated with state law tort causes of action arising from alleged misuse of the bankruptcy process. 74 F.3d at 914. As we explained in *In re Chaussee*, in order to prevent subversion of the bankruptcy process, "[b]ankruptcy courts require full control of the remedies available for addressing improprieties occurring in the cases on their dockets." 399 B.R. at 234.

**2.     Steward Financial's arguments are unpersuasive.**

Steward Financial argues that the above-referenced decisions do not compel a finding that its state law claims are preempted by the Bankruptcy Code for three reasons: (1) the bankruptcy court in Ocean View's bankruptcy cases already determined that Bral's invocation of bankruptcy court jurisdiction was unauthorized and improper; (2) neither the Bankruptcy Code nor the Rules provide a remedy for the type of misconduct Bral engaged in or for the type of harm Steward Financial allegedly suffered as a result of that conduct; and (3) this Panel should follow *Davis*, 481 F.3d 661, to allow its state law claims. Each of these arguments is considered below, though we combine the discussion of the first two of them.

> **a.     Federal preemption protects not only the exclusivity of federal jurisdiction over bankruptcy cases but also the exclusivity of federal remedies for wrongful bankruptcy filings.**

Steward Financial vigorously maintains that Bral orchestrated two fraudulent bankruptcy filings to frustrate its foreclosure.[5] It contends that Bral is liable for the additional $1,100,000 it had to pay at the Second Sale under its state law claims for abuse of process and tortious interference.

---

[5] The bankruptcy court dismissed Ocean View's original, voluntary bankruptcy case for lack of authorization. It dismissed the subsequent involuntary bankruptcy for bad faith. In Bral's subsequent individual bankruptcy, the court did not consider or make any findings regarding his involvement in Ocean View's bankruptcy filings.

The Ninth Circuit, however, specifically held in *Gonzales* that causes of action for abuse of process for a wrongfully-filed bankruptcy are preempted by the Bankruptcy Code. And, taken together, *Gonzales*, *MSR Exploration*, and *Miles II* make clear that preemption does not merely protect exclusive federal jurisdiction to adjudicate the *propriety* of bankruptcy court filings. Rather, the Ninth Circuit extended the application of preemption to ensure that the *consequences* arising from improper bankruptcy court filings also are exclusively controlled by federal law as applied by federal courts. In short, parties injured by wrongful bankruptcy court filings must look to the Bankruptcy Code and Rules for redress.

In *Gonzales*, the debtors filed bankruptcy to prevent a foreclosure much as Ocean View did. The frustrated secured creditors sued the debtors in state court for abuse of process. The Ninth Circuit emphasized the exclusive jurisdiction of the federal courts to address the propriety of bankruptcy filings. However, *Gonzales* went further. Pertinent to Steward Financial's current state law causes of action, the court explained:

> Congress' authorization of certain sanctions for the filing of frivolous bankruptcy petitions should be read as an implicit rejection of other penalties, including the kind of substantial damage awards that might be available in state court tort suits. Even the mere possibility of being sued in tort in state court could in some instances deter persons from exercising their rights in bankruptcy. In any event,

> it is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized.

*Gonzales*, 830 F.2d at 1036.

Both *Miles II* and *MSR Exploration* reiterated and reaffirmed that Congress and the federal courts exclusively control the regulation of the bankruptcy process. Both cases further clarified that federal preemption determines not only jurisdiction but also the relief available for wrongful filings. In *MSR Exploration*, the chapter 11 debtor brought a malicious prosecution action in federal district court against a group of creditors based on proofs of claim they filed in the bankruptcy case. 74 F.3d at 911-12. The district court dismissed the malicious prosecution action on preemption grounds, and the Ninth Circuit affirmed. *Id. MSR Exploration* recognized that "[w]hether creditors should be deterred, and when, is a matter unique to the flow of the bankruptcy process itself—a matter solely within the hands of the federal courts." *Id.* at 916. In support of this proposition, *MSR Exploration* noted the variety of federal remedies Congress enacted to prevent misuse of the bankruptcy process. From this statutory scheme, the court inferred "that Congress has considered the need to deter misuse of the process and has not merely overlooked the creation of additional deterrents." *Id.* at 915.

*Miles II* most directly rejected Steward Financial's argument that state law causes of action remain available for wrongfully-filed bankruptcies. *Miles II* made explicit that the Bankruptcy Code "completely preempts state law tort actions for damages predicated upon the filing of an involuntary bankruptcy petition." 430 F.3d at 1092 (citing *Koffman v. Osteoimplant Tech., Inc.*, 182 B.R. 115, 124 (D. Md. 1995)). In *Miles*, after a husband and wife successfully dismissed ten separate involuntary bankruptcy petitions filed against them and their related businesses, the wife (in her capacity as the husband's spouse and not as a former alleged debtor) and their children sued the petitioning creditors under various tort claims, including abuse of process. As the wife and children were third parties that lacked standing to seek damages for the bad faith filing under § 303(i), they were left without a claim against the petitioning creditors. *Id*. at 1094; *see also Miles I,* 294 B.R. at 763 ("Since all of Appellants' claims were made in their capacities as third parties, none state a claim upon which relief can be granted.").

Contrary to Steward Financial's arguments, this result did not affect the application of federal preemption. Rather, the Ninth Circuit proceeded to explain, "[a]llowing state court remedies for wrongful filings may well interfere with the filings of involuntary bankruptcy petitions by creditors *and with other necessary actions that they, and others, must or might take within the confines of the bankruptcy process*." *Miles II,* 430 F.3d at 1090 (citation omitted and emphasis added).

14

Steward Financial asks that we focus on the impropriety of Ocean View's bankruptcy cases and ignore the sweeping scope of *Miles II*, *MSR Exploration*, and *Gonzales*. We cannot. Those cases recognized a comprehensive federal scheme and a dominant federal interest in maintaining complete control over the bankruptcy process. The result in this instance is preemption of state law causes of action for wrongful bankruptcy filings.[6]

---

[6] Nor do we agree with Steward Financial that it had no remedy under the Bankruptcy Code to address what it perceived to be a wrongful bankruptcy filing. Steward Financial argues that it was harmed when Ocean View filed bankruptcy to frustrate the First Sale, at which it purchased the office building for $3,000,000. Yet, § 362(d) permits secured creditors to annul the automatic stay in certain situations. *See Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 21 (9th Cir. BAP 2003). Stay annulment is not an extreme or extraordinary remedy. *Id.* at 23-24. Steward Financial took no action in Ocean View's voluntary bankruptcy. Rather, it was Beitler, in his individual capacity, who moved to dismiss the bankruptcy. Still, at the hearing on his motion to dismiss, Beitler orally requested that the court annul the stay. The court declined to do so. Neither Beitler nor Steward Financial appealed.

When asked at oral argument why it never sought to annul the stay in Ocean View's first bankruptcy, Steward Financial responded that it did not foresee that the foreclosure sale purchase price might change or that it might be adversely affected. Beitler's oral request to annul the stay at the hearing on the motion to dismiss deeply undercuts this explanation. But the point remains: the Bankruptcy Code provided Steward Financial with the means to validate the First Sale despite Ocean View's bankruptcy. It did not avail itself of this remedy.

15

### b. *Davis* does not permit Steward Financial's state law causes of action for wrongful filing of the Ocean View bankruptcy.

Steward Financial posits that this Panel should follow *Davis*, 481 F.3d 661, instead of *Gonzales*, *MSR Exploration,* and *Miles II*. According to Steward Financial, *Davis* is more directly on point and is the Ninth Circuit's latest pronouncement on federal preemption of state law causes of action based on bankruptcy misconduct.

*Davis* involved two federal district court lawsuits arising from a complicated corporate governance dispute between minority and majority shareholders of the Long Life Noodle Company, Inc. ("LLNC"). The majority shareholder, Rextron International LTD ("Rextron"), was owned by holding companies ultimately owned by Yageo Corporation ("Yageo"). *Id.* at 666. The plaintiffs were minority shareholders, or their agents and successors, who had attempted to exercise the right to select two vacant seats on LLNC's board of directors. In response to the demands of the minority shareholders, Rextron and its representatives considered ways to prevent the minority shareholders from selecting directors, including a bankruptcy filing. *Id*. at 667-68.

Rather than proceed with LLNC's annual meeting at which directors would be elected, the existing directors, each an employee of Yageo, voted to file bankruptcy. *Id.* at 666-67. LLNC proceeded with the bankruptcy and

16

confirmed a plan with the assistance of a chapter 11 trustee, which preserved all existing claims and specifically assigned to the plaintiffs LLNC's pre-petition claims against its majority shareholder, directors, and affiliates. *Id*. at 668.

The plaintiffs sued Rextron, Yageo, and a number of its employees and affiliates for prepetition breach of fiduciary duty, RICO violations, fraud, conspiracy to commit fraud, breach of contract, violation of state unfair competition law, and malicious prosecution. *Id.* at 669.[7] Most of the causes of action in the two lawsuits were winnowed out as a result of defendants' successful pre- and post-trial motions. Still, plaintiffs prevailed on the breach of fiduciary duty causes of action arising from the resolution of LLNC's board to file bankruptcy. *Id.* at 669-72.

On appeal, the defendants argued that the fiduciary duty claims were preempted by the Bankruptcy Code. *Id.* at 678. The Ninth Circuit disagreed. In *Davis*, however, the claims for breach of fiduciary duty "concern conduct that occurred *prior to* bankruptcy" whereas *MSR Exploration*, *Gonzales,* and *Miles II* all involved "conduct that occurred *during* bankruptcy." *Id.* at 678 (emphasis in original). Rather than the

---

[7] Additionally, in their alleged capacity as minority shareholders (or successors to the minority shareholders), the plaintiffs filed a separate lawsuit for damages against Rextron, which was dismissed on grounds unrelated to the preemption issues raised in this appeal. *Id.* at 669.

wrongfully-filed bankruptcies challenged in *Gonzales* and *Miles II*, or the proofs of claim challenged in *MSR Exploration*, the complaint in *Davis* "alleged that the directors and majority shareholder engaged in self-dealing to the detriment of the corporation through their decision to pursue bankruptcy and sought damages for breach of fiduciary duty under California state law." *Id.* at 679. As such, unlike *Miles II*, *MSR Exploration*, and *Gonzales*, the causes of action for breach of fiduciary duty were governed by state corporate governance law rather than federal bankruptcy law. *Id.* Thus, the prepetition fiduciary duty claims were not preempted because they were "not based on 'activities that might be undertaken in the management of the bankruptcy process.'" *Id.* at 679-80 (quoting *MSR Expl., Ltd.*, 74 F.3d at 914).

Davis is not in conflict with the Ninth Circuit's other preemption decisions. In fact, *Davis* reaffirmed the Ninth Circuit's commitment to the broad application of federal preemption to bar all state law causes of action for alleged misconduct occurring as part of the bankruptcy process. *Davis* recognized a sharp distinction between prepetition claims and those for a wrongfully-filed bankruptcy, which accrue only upon the filing of the bankruptcy and are inextricably intertwined with the bankruptcy process. *Id.* at 678-79. In other words, *Davis* did not depart from the Ninth Circuit's holdings in *Miles II*, *MSR Exploration*, and *Gonzales*. *See id.*; *see also Nat'l Hockey League v. Moyes*, No. CV-10-01036-PHX-GMS, 2015 WL

18

7008213, at *6 (D. Ariz. Nov. 12, 2015) (examining *Davis* and concluding that *Davis* does not apply when the causes of action "arise only after and because of the bankruptcy filing")

Steward Financial attempts to navigate around the holdings of *Miles II*, *MSR Exploration*, and *Gonzales*, and bring its state law claims within the safe harbor of *Davis* by noting that its claims accrued prior to *Bral's* bankruptcy filing. It emphasizes that its causes of action are founded on Bral's prepetition conduct and does not implicate the regulation of the bankruptcy process in *his* bankruptcy case. This argument ignores the preemption emanating from *Ocean View's* bankruptcy filing. Steward Financial does not assert prepetition state law causes of action divorced from the Bankruptcy Code. Rather, its claims arose from Ocean View's initial bankruptcy filing itself. As such, they are "completely preempted" by the Bankruptcy Code because the gravamen of Steward Financial's causes of action is "self-consciously and entirely one which seeks damages for [papers] filed and pursued in the bankruptcy court." *MSR Expl., Ltd.,* 74 F.3d at 912; *see also Davis*, 481 F.3d at 679.

B.    **The bankruptcy court did not err when it held that Steward Financial failed to establish damages.**

The bankruptcy court also determined that Steward Financial failed to establish that it suffered any harm for which it legally is entitled to

19

recover damages.[8] We agree with this alternate basis for affirmance.

Steward Financial correctly points out that the automatic stay in Ocean View's unauthorized voluntary case unequivocally caused the First Sale to be void. In turn, having been deprived of the benefit of the First Sale, Steward Financial was forced to credit bid $4,100,000 to purchase the office building at the Second Sale. It reasons that as a result of the improperly commenced Ocean View bankruptcy, it was damaged in one of two ways: (1) its guaranty claim against Bral was diminished by the $1,100,000 price differential between the two sales, and (2) it was forced to pay $1,100,000 more for the office building than it would have needed to pay at the First Sale.

We are not aware of any compensable harm to Steward Financial – either as the foreclosing secured creditor or as the prevailing credit bidder at the void First Sale – arising from the $1,100,000 price differential. As a secured creditor, Steward Financial received everything it was entitled to

---

[8] Neither party has challenged the bankruptcy court's statement or application of the parties' respective evidentiary burdens in a claims objection proceeding. Those burdens are correctly set forth in the bankruptcy court's oral ruling, which is consistent with governing Ninth Circuit law. *See Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039-40 (9th Cir. 2000); *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991). When the objecting party points to facts or law reflecting that the claimant has omitted an essential element of its substantive claim, the objecting party satisfies its burden of production. *See RW Squared Med. Grp. v. HWY Squared, Inc. (In re HWY Squared, Inc.)*, 208 F. App'x 581, 582–83 (9th Cir. 2006) (citing *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 (9th Cir. BAP 2003)). This is precisely what Bral has done here by establishing Steward Financial's lack of damages.

receive from a nonjudicial foreclosure when the Second Sale closed. In fact, it received a much larger recovery on its real property collateral than it would have received under the First Sale, which yielded a lower price. Thus, its argument concerning its so-called diminished guaranty claim does not even make sense. Logically, Steward Financial could not have been injured by receiving *more* value for its collateral. Put differently, Steward Financial had but one debt for the unpaid loan balance, and the recovery from its collateral could not by its very nature diminish its right to satisfaction of that entire debt. As such, Steward Financial has failed to state any damage in its capacity as a secured creditor.

As the frustrated purchaser at the First Sale, Steward Financial understandably was upset that it did not acquire the office building at the original price, given that it had to credit bid an additional $1,100,000 roughly four months later to acquire the same property. Even so, Steward Financial concedes that its rights as a bidder at both foreclosure sales were exactly the same as any other bidder – except that it was entitled to credit bid the outstanding amount of the secured debt it was owed. *See generally All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1238 (1995).

Nonjudicial foreclosure sales in California are governed by a comprehensive scheme of laws enacted by the legislature. *See Moeller v. Lien*, 25 Cal. App. 4th 822, 830–31 (1994). The successful bidder at a nojudicial foreclosure sale generally is entitled to have a trustee's deed of

21

sale executed and recorded in its favor and thereby receive legal title to the property. *Id.* (citing *Homestead Sav. v. Darmiento*, 230 Cal. App.3d 424, 431 (1991)). This right does not entitle the bidder to acquire the property – or to recover damages – when a foreclosure sale is void. *See Little v. CFS Serv. Corp.,* 188 Cal. App. 3d 1354, 1356 (1987); *see also Moeller,* 25 Cal. App. 4th at 832 ("If there is a defect in the procedure which is discovered after the bid is accepted, but prior to delivery of the trustee's deed, the trustee may abort a sale to a bona fide purchaser, return the purchase price and restart the foreclosure process." (citations omitted)).

Here, the First Sale was not merely voidable but void. *In re Fjeldsted*, 293 B.R. at 20 (citing *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 572 (9th Cir. 1992)). Thus, as explained above, Steward Financial acquired no rights as the frustrated bidder at the void First Sale. It necessarily follows that a frustrated bidder has no legal entitlement to damages resulting from a void sale.[9]

In sum, the undisputed facts presented in the bankruptcy court

---

[9] Arguably, there is an implicit premise underlying Steward Financial's proof of claim: that it was forced to pay "too much" at the Second Sale for the office building. This premise is inconsistent with the well-established foreclosure law principle that the purchase price paid for real properly at a regularly conducted foreclosure sale establishes its value for purposes of determining the sufficiency of the sale price. *See BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 545 (1994); *see also Rothwell,* 10 Cal. 4th at 1237 ("Where there is no irregularity in a nonjudicial foreclosure sale and the purchaser is a bona fide purchaser for value, a great disparity between the sales price and the value of the property is not a sufficient ground for setting aside the sale." (quoting *Moeller*, 25 Cal. App. 4th at 832)).

demonstrated that Steward Financial did not suffer any injury for which it legally is entitled to recover damages. While it has attempted to characterize its injury as associated with its rights as a secured creditor, as the holder of Bral's guaranty, or as the prevailing bidder at the First Sale, Steward Financial has not established legally-cognizable harm in any of these capacities.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order disallowing Steward Financial's claim number 19.